Jesse L. London, OSB #132730
Kent Anderson Law Office
888 West Park Street
Eugene, Oregon 97401
Telephone: (541) 683-5100
Fax: (541) 484-1754

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **SIXEL, LLC, an Oregon limited liability company,** | Case No. 6:17-cv-01846-AA |
| Plaintiff, | Lane County Circuit Court Case No.: 17CV44922 |
| vs. | |
| **JOHN A. PENNING III, et al.,** | PLAINTIFF'S RESPONSE TO |
| Defendants. | Defendants/Petitioners John A. Penning III, Robert J. Hayes, Michael Lum, Michael W.Mooney, Kristopher Nichter, Melissa A. Galvan Peterson, Elizabeth M. Flores, and Lauren F. Mishler's |
| | PETITION TO COMPEL ARBITRATION |

Respondent, SIXEL, LLC ("Sixel" or "Respondent"), by and through its attorneys, Kent Anderson Law Office, for their Response to Defendants' Penning, Hayes, Lum, Mooney, Nichter, Peterson, Flores, and Mishler's (collectively, "Volaire Defendants") Petition to Compel Arbitration ("Petition"), respond as follows:

**Page 1 – PLAINTIFF'S RESPONSE TO VOLAIRE DEFENDANTS' PETITION TO COMPEL**

**INTRODUCTION**

1.       Both before and after they left the Sixel's employment, the Volaire Defendants have made a concerted effort to misappropriate Sixel's customers and intellectual property, which it and its founder developed over more than 20 years making it a market leader in aviation consulting. The misappropriation has paid a windfall to the Volaire Defendants both personally and to the company they created to siphon Sixel's misappropriated customers and intellectual property, defendant Volaire Aviation Consulting, Inc. ("Volaire").

2.       Virtually overnight, Sixel lost substantially all its customers and intellectual property as a result of Volaire Defendants' actions in concert with Volaire. Without possessing Sixel's intellectual property, including its trade secrets, taken by the Volaire Defendants, Volaire would be completely unable to service Sixel's former clients today.

3.       In order to protect its interests from further damage by enjoining the Volaire Defendants from further use of its intellectual property and to be made whole for the torts against it, Sixel filed a state court litigation in Lane County, Oregon in Case No. 17CV44922 which was removed to this Court on November 17, 2017.

4.       The Volaire Defendants know that whether Sixel can be successful in defending itself from the misappropriation rests on the grant of a preliminary or permanent injunction of the Volaire Defendants continued possession and use of Sixel's intellectual property in a complex trade secrets case involving novel federal law with access to complete discovery. Moreover, Volaire Defendants know that by compelling arbitration of the claims against the Volaire Defendants while the almost identical claims against Volaire and other entity defendants remain in this Court, Sixel will be forced to fight on two fronts. The split will necessarily waste resources and create judicial inefficiencies in spite of the goals of arbitration to the contrary. Accordingly, Volaire Defendants have sought to compel arbitration via its Petition on February 13, 2018 (Doc. No. 28). Sixel herein timely files its response to the Petition.

5.       Owning to the high value and difficulty of enforcing of its intellectual property and customer relationships, Sixel explicitly carved out from the scope of its arbitration clause the

1   ability to remedy breaches of confidentiality, failure to return its intellectual property, and
2   interferences with its business relationships in the terms of its Employee Handbook and
3   Employee Contract" (the "Employee Contract") between Volaire Defendants and Sixel.  The
4   arbitration clause in the Employee Contract is narrowed with respect to certain tort claims
5   regarding intellectual property and interference with business relationships.  Therefore, Sixel is
6   entitled to the benefit of its bargain and can properly have its claims necessitating injunctive
7   relief determined in this Court which is best suited to the task.

8   6.        Moreover, Sixel's tort claims are independent of its contract claims related to the
9   Employee Contract or the employment relationship after it ended.  Therefore, Plaintiff's third
10  through eighth tort claims should not be subject to the arbitration clause.  This is especially true
11  of Sixel's fourth (Oregon Trade Secrets Act, OUTSA), fifth (Defend Trade Secrets Act), and
12  eighth (Interference with Business Relations) tort claims regarding the explicitly excluded
13  intellectual property and interference claims.

14  7.        Plaintiff does not dispute that there is a valid arbitration agreement in the Employee
15  Contract.  However, Plaintiff contends that its claims in this Court do not come within the scope
16  of the arbitration agreement.

17                                         **FACTS**

18  8.        Sixel owned all the rights to the intellectual property it developed before the Volaire
19  Defendants entered into a business relationship with Sixel and it also currently owns all rights to
20  the intellectual property that the Volaire Defendants developed while employees of Sixel.  Sixel
21  had relationships with its customers pre-existing and independent of its relationships with the
22  Volaire Defendants and would have continued those relationships but for the Volaire
23  Defendants' actions.

24  9.        The arbitration terms in the Employee Contract, subsection 7-10, consists of (1) an
25  agreement to arbitrate employment related claims and breach of the contract in subsection 7-
26  10(a); and (2) a carve out for claims related to confidentiality, intellectual property, and
27  interference with business relationships in 7-10(b) ("Arbitration Agreement").

**Page 3 – PLAINTIFF'S RESPONSE TO VOLAIRE DEFENDANTS' PETITION TO COMPEL**

1

10.        Subsection 7-10(a) provides that:

2

3              "Except as provided in Section 7-10(b) below, [Petitioner] agrees
               that any dispute, claim or controversy concerning [Petitioner's]
4              *employment or the termination of [Petitioner's] employment* or any
               dispute, claim or controversy arising out of, or relating to, any
5              interpretation, construction, performance or breach of *this
               Agreement*, shall be settled by arbitration to be held in Eugene,
6              Oregon, in accordance with the rules then in effect of the American
               Arbitration Association. The arbitrator may grant injunctions or
7              other relief in such dispute or controversy. The decision of the
               arbitrator shall be final, conclusive and binding on the parties to
8              the arbitration. Judgment may be entered on the arbitrator's
               decision in any court having jurisdiction. The Company and
9              [Petitioner] shall each pay one-half of the costs and expenses of
               such arbitration, and each party shall separately pay that party's
10             counsel fees and expenses." (emphasis added)

11.        The explicit carve-out in subsection 7-10(b) provides that:

11

12             [Petitioner] agrees that it would be impossible or inadequate to
               measure and calculate the Company's damages from any breach of
13             the covenants set forth in Section 7, Subsections 2 [Confidential
               Information], 3 [Conflicting Employment], 5 [Notification of New
14             Employer], 7 [Interference] and, 9 [Representations] herein.
               Accordingly, [Petitioner] agrees that if [Petitioner] breaches any of
15             such Sections, or Subsections, the Company will have available, in
               addition to any other right or remedy available, the right to obtain
16             an injunction from a court of competent jurisdiction restraining
               such breach or threatened breach and to specific performance of
17             any such provision of this Agreement.  [Petitioner] further agrees
               that no bond or other security shall be required in obtaining such
18             equitable relief and [Petitioner] hereby consents to the issuance of
               such injunction and to the ordering of specific performance.

19

12.        On information and belief, prior to their termination of employment, Volaire was

20

formed and the Volaire Defendants began soliciting Sixel's customers to come with them to

21

Volaire after they left Sixel arguing that they could provide the same proprietary reports,

22

analysis, and consulting services as Sixel without an interruption in their contracts.

23

13.        Substantially all of Sixel's clients formed contracts with Volaire.

24

14.        On information and belief, after leaving Sixel, each of the Volaire Defendants asked

25

Sixel's customers or business partners with which they had a direct relationship to move their

26

contracts to Volaire.

27

**Page 4 – PLAINTIFF'S RESPONSE TO VOLAIRE DEFENDANTS' PETITION TO COMPEL**

15.     On information and belief, after leaving Sixel, each of the Volaire Defendants kept Sixel's intellectual property and brought it with them to Volaire and use it to service Sixel's former clients.

16.     Sixel expects that, when any of the Volaire Defendants terminate their relationship with Volaire, they will continue to possess and use Sixel's intellectual property.

17.     Sixel expects that, when any of the Volaire Defendants terminate their relationship with Volaire, they will continue to service Sixel's former customers on their own or with their subsequent employer.

## ARGUMENT

18.     Because Plaintiff's tort claims are not within the scope of the Arbitration Agreement and because such tort claims are independent of the Arbitration Agreement, the Petition should be denied.  While the Petition is skim on the law and summary in approach, there is an applicable body of law in this jurisdiction regarding enforceability of arbitration agreements.  In the Ninth Circuit, a court analyzing enforceability under the Federal Arbitration Act ("FAA") must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

19.     Here, the parties do not dispute that a valid agreement to arbitrate exists and the only issue before the court is whether Sixel's tort claims generally, as well as intellectual property and interference claims specifically, are within the scope of the agreement.  While there is not an abundance of authority in the Ninth Circuit related specifically to enforceability of arbitration agreements with carve outs for intellectual property mainly involving trade secrets and interference with business relationships, the Federal Circuit and Eastern District of Texas with have specific knowledge regarding intellectual property litigation and where many of such cases are decided, have given guidance on the issue.

20.       In one case heard last year in the Eastern District of Texas, as here, defendants argued that the court compel arbitration because all of plaintiff's claims stemmed from an employment contract and were within the scope of the arbitration provision. *N. Am. Deer Registry, Inc. v. Dna Sols., Inc.,* Civil Action No. 4:17-CV-00062, 2017 U.S. Dist. LEXIS 73930, at *18 (E.D. Tex. May 16, 2017). The *Deer Registry* court held that the plaintiff's trade secret and tort related claims should not be sent to arbitration by finding that the intent of the parties was to limit the scope of the arbitration agreement. *Id.* at *16. The court reasoned extensively from United States Supreme Court precedent that a party cannot be required to arbitrate specific claims when the intent of the agreement was not to include them. *Id.*[1] In order to prevent the court from forcing an arbitration for claims where the intent was lacking, the court should analyze the arbitration agreement using contract analysis focusing on intent of the parties in the normal fashion, irrespective of the policy goals favoring arbitration generally. *Id.*

21.       In an Eastern District of California case, the court analyzed why it is important and appropriate for businesses relying on trade secrets to carve out misappropriation claims and remedies from arbitration clauses. *Christopher Steele v. American Mortgage Management Services, dba Pinnacle,* Memorandum and Order (Doc. No. 25), Case No. 2:12-cv-00085, (E.D. Cal. October 26, 2012). In holding that exclusion of trade secret claims and remedies were not unconscionable in a wage and hour case, the *Steele* court reasoned that, "[t]he court can conceive of valid reasons, entirely independent of any intent to place the employees at a relative disadvantage or to generate one-sided results, for excluding claims of unfair competition or trade secret violations from the mandatory arbitration provisions of the Agreement. Unlike the type of claims involved in this case such claims typically arise after the employer-employee relationship has terminated. More importantly, the resolution of such claims has the potential of substantially

---

[1] "Because arbitration clauses are creatures of contract, a court cannot require a party to arbitrate a dispute it did not agree to arbitrate. *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002). The Supreme Court in *Granite Rock* reaffirmed the need to resolve whether a dispute falls within the scope of an arbitration agreement without deviating from the parties' intent. *See Granite Rock Co. v. Int'l Bhd. Of Teamsters,* 561 U.S. 287, 299-300, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010). The court must look first to whether the party agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *Id.*

Page 6 – PLAINTIFF'S RESPONSE TO VOLAIRE DEFENDANTS' PETITION TO COMPEL

impacting the rights of third parties." *Id*. at 17-18.  The court noted that compelling arbitration of such tort claims arising after employees having joined a new employer has the effect of leaving the previous employer to "to fight on two fronts [, namely, against the new employer in court and against the former employee in arbitration]." *Id*. at 18, n.4.

22.       In the case at bar, the Arbitration Agreement in subsection 7-10(b), as part of the subsection 7 regarding arbitration, specifically targeted and carved out injunctive relief remedies for Plaintiff's tort related intellectual property and interference claims to prevent the type of strategy to force Plaintiff to fight on two fronts employed by Petitioners here.  Sixel's competitive position in the market depends on the intellectual property in the complex data analysis, procedures, report formats, and presentations.  Therefore, it added the exclusions to protect itself against theft of its core intellectual property.

23.       Though couched in terms of injunctive remedies, the remedies would be useless in any court if Sixel could not bring the underlying claims to court outside of arbitration.  Although not explicit in terms of the claims being excluded, the clear intent of the parties was to exclude the claims and the remedies that follow them.  An interpretation that subsection 7-10(b) only excludes remedies is to make the specifically crafted exclusion a nullity. That incorrect interpretation of the agreement must give way to the intent of the parties which can be gleaned from the context of the relationship between the exclusions in 7-10(b) as part of the greater whole of the subsection on arbitration.

24.       In order to give effect to the exclusion in subsection 7-10(b), this Court should interpret the subsection 7-10(b) to include the remedies explicitly described and the claims underlying those remedies.

25.       Beyond giving effect to the explicit exclusion of Plaintiff's claims from arbitration under the correct interpretation of the terms of the Employee Contract, Plaintiff's claims do not arise from solely from contract, but from statute and general principles of tort.  Subsection 7-10(a) is limited in scope to claims related to "*employment or the termination of [Petitioner's] employment* or any dispute, claim or controversy arising out of, or relating to, any interpretation,

construction, performance or breach of *this Agreement*" (emphasis added).  The scope of these terms does not include claims for breach of duties arising out of statute or tort generally, but rather to employment related issues.

26.      For example, a claim for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA") requires: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. 18 U.S.C. § 1836(b)(1).  Misappropriation is satisfied if the trade secret is acquired by a person who knows or has reason to know that the trade secret was acquired by improper means. *Id*. § 1839(5). Alternatively, misappropriation is satisfied if disclosure of the secret is made without express or implied consent by a person who used improper means to obtain the secret, or at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was improperly obtained or acquired under circumstances giving rise to a duty to maintain its secrecy. *Id.*  "Improper means" includes breach of a duty to maintain secrecy, but does not include reverse engineering or independent derivation. Id. § 1839(6).

27.      Oregon has adopted the Uniform Trade Secrets Act, which has similar elements to the federal act ("OUTSA").  *See* ORS 646.461, et seq.  Misappropriation and improper means have the similar definitions under the federal and OUTSA.

28.      The elements of a statutory claim under either the DTSA or OUTSA can be maintained without any reference to an employment contract.   Therefore, such claims arise and can be brought without reliance on a contract provisions.  Sixel will use the Employee Contract as evidence to support its claims that its intellectual property were, in fact, trade secrets by dint of having employees sign confidentiality agreements as condition of employment.  While Sixel may use the contracts to fit an element of its claims, Sixel's claims under DTSA and OUTSA do not stem from, and are not reliant on, the Employment Contract.  Likewise, neither are its tort claims to interference with business relationships and breach of duties owed from the employment relationship irrespective of particular contract terms of employment.

1

## CONCLUSION

2   29.        Sixel and Petitoners bargained for and intended an arbitration agreement that was

3   narrowed to non-tort employment claims and specifically excluded certain types of claims

4   related to intellectual property and interference that necessitated one-sided action unrestricted by

5   arbitration on Sixel's to protect its core resources in the event that employees misappropriated its

6   assets.  The Volaire Defendants did misappropriate Sixel's intellectual property and customers

7   leaving it in position with much fewer resources than the Petitioners.  Now, rather than a cost-

8   saving and efficiency mechanism, Petitioners seek to compel arbitration to force Sixel to waste

9   resources and fight on two fronts, knowing that their current employer, Volaire, cannot compel

10  arbitration and will stay in this court with almost identical claims and different discovery rules.

11  The Petition should be denied.

12

## PRAYER FOR RELIEF

13          WHEREFORE, the Respondent respectfully request that this Court deny the Petition.

14

15  Dated this 23rd day of February, 2018.

16

17                              KENT ANDERSON LAW OFFICE.

18

19                          By:    s/ Jesse L. London
                                   Jesse L. London, OSB #132730
20                                 jesse@kentandersonlaw.com
                                   Dominic V. Paris, OSB #135634
21                                 dominic@kentandersonlaw.com
                                   Trial Attorney:  Jesse L. London

22                                 888 W. Park St., Eugene, OR  97401
                                   503-877-3107 (Phone)
23
                                   Of Attorneys for Plaintiff, Sixel LLC
24

25

26

27

**Page 9 – PLAINTIFF'S RESPONSE TO VOLAIRE DEFENDANTS' PETITION TO COMPEL**

**CERTIFICATE OF SERVICE**

I certify that on February 23, 2018, I served the Response to the Petition to Compel Arbitration on the following electronically via ECF:

Ms. Marjorie A. Elken
Buckley Law, P.C.
5300 Meadows Road, Suite 200
Lae Owsego, OR 97035
Umae@buckley-law.com

Ms. Aurelia J. Erickson
McGaughey Erickson
65 SW Yamhill Street, Suite 200
Portland, OR 97204
aurelia@law7555.com

Mr. Jeffrey J. Matthews
Ms. Andrea D. Coit
Harrang Long Gary Rudnick, P.C.
360 East 10th Avenue, Suite 300
Eugene, OR 97401
jeffrey.j.matthews@harrang.com
andrea.coit@harrang.com

Mr. Todd K. Boyer
Mr. Benjamin R. Buchwalter
Baker McKenzie, LLP
660 Hansen Way
Palo Alto, CA 94394
Todd.boyer@bakermckenzie.com
Ben.buchwalter@bakermckenzie.com

Mr. Connor K.R. Beckley
cbeckley@beckley-law.com
BECKLEY & BONS, P.C.
66 Club Road, Suite 360
P.O. Box 11098
Eugene, OR 97440-3298
cbeckley@beckley-law.com

Alexander C. Trauman
MOTSCHENBACHER &BLATTNER LLP
117 SW Taylor Street, Suite 300
Portland, OR 97204-3029
Atrauman@portlaw.com