IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SIXEL, LLC, *an Oregon limited liability Company*,

   Plaintiff,

  v.

JOHN A. PENNING III, MICHAEL LUM, MICHAEL W. MOONEY, KRISTOPHER NICHTER, ROBERT J. HAYES, MELISSA A. GALVAN PETERSON, ELIZABETH M. FLORES, LAUREN F. MISHLER, JEREMIAH GERALD, ILONA CAMBRON, MARTIN A. KAMMERMAN, THERESA F. (TERRI) CAMPBELL, ERICKA L. GREGORY, NEPTUNE A. LYNCH XI, KATHERINE JONES and KYLE ELLIOTT, *individuals*, VOLAIRE AVIATION CONSULTING, INC., *an Indiana corporation*, UMB, INC., *a Delaware corporation*, AIRPORT STRATEGY AND MARKETING, LIMITED, *a United Kingdom corporate entity, doing business in Oregon as UMB, LLC*,

   Defendants.

Case No. 6:17-cv-01846-AA
**OPINION AND ORDER**

/ / /

/ / /

AIKEN, District Judge:

Plaintiff, Sixel, LLC, brings this action against a number of former employees, alleging that the employees misappropriated trade secrets after termination of their employment in violation of the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836). Plaintiff also brings a number of related claims, including Breach of Confidentiality Agreement, Breach of Covenant Not to Compete, Breach of the Duty of Good Faith and Fair Dealing, Breach of the Duty of Loyalty, Breach of Fiduciary Duty and Intentional Interference with Prospective Economic Advantage. Defendants, John A. Penning III, Robert J. Hayes, Michael Lum, Michael Mooney, Kristopher Nichter, Melissa Galvan Peterson, Elizabeth Flores, and Lauren Mishler ("Petitioners"), have filed a Petition to Compel Arbitration (doc. 28) pursuant to the terms of their Employee Handbook and Employee Contract (the "Employment Agreement") with plaintiff. For the reasons set forth herein, the petition is granted.

## BACKGROUND

Plaintiff is the successor to Sixel Consulting Group, Inc. ("SCG") which employed defendants. SCG, located in Eugene, Oregon, was established by Mark Sixel in 2001, and engaged in consulting, marketing, and air-service development specializing in using proprietary technology to help determine the most profitable airline routes for clients to pursue and how to optimally allocate their resources.

As a condition of employment, petitioners were required signed the Employment Agreement, which included various provisions such as a covenant not to compete, as well as confidentiality and non-solicitation provisions. The Employment Agreement also included a provision whereby the parties agreed to settle disputes through an arbitration process. Crucially, for the present motion, Section 7 of the Employment Agreement for each of the petitions contains

a subsection dealing with "Arbitration and Equitable Relief." Specifically, Section 7-10(a) in each of the Employment Agreements provides:

> "Except as provided in Section 7-10(b) below, [Petitioner] agrees that *any dispute, claim or controversy concerning [Petitioner's] employment or the termination of [Petitioner's] employment or any dispute, claim or controversy arising out of, or relating to, any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held in Eugene, Oregon, in accordance with the rules then in effect of the American Arbitration Association.* The arbitrator may grant injunctions or other relief in such dispute or controversy. The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration. Judgment may be entered on the arbitrator's decision in any court having jurisdiction. The Company and [Petitioner] shall each pay one-half of the costs and expenses of such arbitration, and each party shall separately pay that party's counsel fees and expenses."

(emphasis added).

In late 2016, plaintiff claimed to experience financial difficulties, which resulted in several employee layoffs and voluntary resignations. Following this period, petitioners established an aviation consulting business. Plaintiff now alleges that defendants and others conspired in starting these companies to improperly take several of plaintiff's clients and make use of plaintiff's protected intellectual property. Plaintiff pursued these allegations by filing a complaint in the Circuit Court of the State of Oregon. Defendants then removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1446, and Fed R. Civ. P. 81(c).

Petitioners now seek to compel arbitration under the terms of the Employment Agreement mentioned above.[1]

/ / /

/ / /

---

[1] The Court recognizes that disposition of this petition has fallen outside the typical under advisement period. The Court notes that due to the nature of the filing, normal procedures in CM/ECF did not pick up the document for motion tracking and reporting purposes. The Court apologizes for any inconvenience. This issue has been resolved moving forward.

Page 3 – OPINION AND ORDER

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). An order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-583 (1960). When considering arbitrability, the court determines (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).

Pursuant the FAA, the interpretation of an arbitration agreement is generally a matter of state law. *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 681, (2010). Oregon, like the federal courts, recognizes a presumption in favor of arbitrability. *See Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. 137, 147 (2010), citing to *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. at 582.

## DISCUSSION

Here, the parties agree that a valid arbitration agreement exists; the specific language is contained in the Employment Agreement. Because there is a valid agreement, the only remaining question is whether the agreement encompasses the disputes at issue—*including* whether the parties agreed to arbitrate arbitrability. Petitioners argue that the language contained in the Employment Contract is plain and, thus, any claims arising out of their employment or termination of employment must settled in arbitration pursuant to Section 7-10(a) of the Employment Contract.

Plaintiff contends that the present claims fall outside of the scope of the arbitration agreement. To support this contention, plaintiff points to a carve-out provision (Section 7-10(b))[2] in the Employment Agreement, which generally preserves plaintiff's right to seek injunctive relief from a court under certain circumstances (e.g., breach of confidentiality agreement). Plaintiff argues that the carve-out provision protects not only its ability to pursue injunctive remedies in court—*but also* the underlying causes of action.

To determine whether the parties intended their arbitration agreement to include the present controversy, courts examine the text and context of the provision. *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. at 147, *citing Yogman v. Parrott*, 325 Or. 358, 361 (1997). If a provision is unambiguous, then the analysis is complete, and the court gives effect to the parties' intentions.

In reviewing Section 7-10(b), the Court holds the that the plain language of the provision does not bar arbitration for the present claims. The clause is explicitly couched, even in its title, in terms of remedies, not any specific cause of action.

Moreover, this interpretation of the Employment Agreement does not nullify plaintiff's ability to seeking the injunctive relief described in Section 7-10(b), while also pursuing the underlying claims through arbitration proceedings. Indeed, the right to seek injunctive relief under

---

[2] §§7-10(b), titled "Equitable Remedies" provides, in pertinent part:

[Petitioner] agrees that it would be impossible or inadequate to measure and calculate the Company's damages from any breach of the covenants set forth in Section 7, Subsections 2, 3, 5, 7 and, 9 herein. Accordingly, [Petitioner] agrees that if [Petitioner] breaches any of such Sections, or Subsections, the Company will have available, in addition to any other right or remedy available, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. [Petitioner] further agrees that no bond or other security shall be required in obtaining such equitable relief and [Petitioner] hereby consents to the issuance of such injunction and to the ordering of specific performance.

these circumstances is protected both by Oregon statute and the plain language in the Employment Agreement. *See* ORS 36.470(1), (3)(b) (stating "[i]t is not incompatible with an arbitration agreement for a party to request from a court, before or during arbitral proceedings, an interim measure . . . [including a] preliminary injunction granted in order to protect trade secrets . . . ").

Plaintiff also contends that its statutory claims as well as those based on torts principles are not arbitrable under the Employment Agreement, because that agreement is limited to claims related to "employment or the termination of [Petitioner's] employment or any dispute, claim or controversy arising out of, or relating to, any interpretation, construction, performance or breach of this Agreement." Employment Agreement §§ 7-10(a). Specifically, plaintiff argues that its claims pursuant to the DTSA and Oregon's' Uniform Trade Secrets Act, as well as its tort claims for interference with business relationships and breach of duties owed from the employment relationships do not arise from the terms of the Employment Agreement.

Petitioners respond that any questions as to the arbitrability of certain claims should be left to the arbitrator pursuant to the language of the Employment Agreement. Moreover, they respond that even if this Court does examine whether certain claims are arbitrable, it should hold that all disputes are covered by the intent of the parties and the broad language of the Employment Agreement. Each of the petitioners have submitted declarations, attesting that they intended all disputes to be subject to arbitration.

As to the issue of whether the parties agreed to subject the arbitrability of certain claims to arbitration, the Court finds it highly significant that in Section 7-10(a) of the Employment Agreement the parties included that disputes "shall be settled by arbitration [. . .], in accordance with the rules then in effect of the American Arbitration Association." Notably, the Ninth Circuit has joined "every circuit to consider the issue" when it held that "incorporation of the AAA rules

(in the agreement) constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). To reiterate, Section 7-10(a) of the employment contract clearly provides that disputes will "be settled by arbitration . . . in accordance with the rules then in effect of the American Arbitration Association." Thus, under *Brennan*, the parties' incorporation of the AAA rules shows a clear and unmistakable intent that an arbitrator determine the question of arbitrability.

Further, even setting aside the parties' explicit intent to arbitrate arbitrability, plaintiff's claims appear to fall squarely within the scope of the arbitration clause, thereby triggering mandatory arbitration. While defendant relies on out district court orders to suggest that intellectual property claims should not be subject to arbitration under the present Employment Agreement, plaintiff's correctly note that Ninth Circuit and Oregon state case law broadly favor arbitration even when claims arise in tort or from statute. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999), *citing Mitsubishi Motors*, 473 U.S. 614, 627, 105 S. Ct. 3346; *Livingston v. Metro. Pediatrics, LLC*, 234 Or. App. at 148 (2010). Similarly, in this case the broad language of Section 7-10(a) explains that "any dispute, claim or controversy concerning [petitioners] employment or termination of [] employment" or "any dispute claim or controversy arising out of any interpretation, construction, performance or breach of the [employment agreement]." All of plaintiffs' claims against petitioners arise from the same set of facts, namely that petitions during the course and at the termination of their employment misappropriated protected information and then tortuously made use of this information in setting up rival businesses. These claims touch on the broad language of the Employment agreement.

Given the FAA and Oregon state law's emphatic preference for enforcing arbitration agreements, as well as the broad language of the arbitration agreement and specific claims at issue,

Page 7 – OPINION AND ORDER

the Court finds that compelling arbitration in the present case is not inconsistent with the plain language of the Employment Agreement. Thus, the petition to compel should be granted.

## CONCLUSION

For the reasons stated above, the Petition to Compel Arbitration (doc. 28) is GRANTED. Further, the parties Stipulated Motion for Extension of Discovery and Pretrial Deadlines (doc. 60) is GRANTED. Plaintiff's responses to the pending Motions to Dismiss (docs. 56, 57, and 58) as well as plaintiffs' response to Defendant Gregory's Counter Claim (doc. 59) shall be due 14 days following this order. Initial disclosures as well as discovery responses to all pending requests to all parties shall be due 21 days from the date of this order. The parties may submit further proposed scheduling orders as needed.

IT IS SO ORDERED.

Dated this 24 day of January 2019.

_____
Ann Aiken
United States District Judge